Filed 11/6/13  P. v. Kamakani CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO KAMAKANI,<br><br>    Defendant and Appellant. | H037675<br>(Santa Clara County<br>Super. Ct. No. C1065803) |

In July 2011, defendant Francisco Kamakani, pursuant to a negotiated disposition, pleaded guilty to attempted premeditated murder (Pen. Code, §§ 187, 664).[1]  He also admitted allegations of premeditation (§ 189); that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)); and that he was 16 years of age or older when the offense was committed within the meaning of Welfare and Institutions Code section 707, subdivision (d) and that the offense was one enumerated in subdivision (b) of that statute.  Defendant was promised in exchange for this plea that the seven remaining felony counts in the information (including premeditated murder and four additional counts of attempted premeditated murder) would be dismissed, and that he would receive a prison term of 15 years to life.  The court--after advising defendant of the constitutional rights he was waiving and confirming that he was voluntarily waiving those rights in pleading guilty under the agreement--advised defendant that he would be on parole for a period of three years after his release from prison.  At the sentencing

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

hearing two and one-half months later, defendant, although represented by counsel, personally requested leave to withdraw his guilty plea; he claimed, inter alia, that he had been pressured by his family into agreeing to the plea bargain. The court denied the request. It then sentenced him to prison for 15 years to life on the one attempted premeditated murder conviction. It indicated that defendant, upon his release, would be on parole for a term of seven years to life.

Defendant asserts two claims of error on appeal. First, he argues that a three-year parole period was promised to him when he entered his guilty plea, but the court could not legally impose it and was required to impose a more lengthy parole term. Therefore (he contends), the court was required to give him a chance to withdraw his plea before the imposition of this more severe sentence. And, defendant argues, to the extent that he may have forfeited this challenge because it was not raised below, he was deprived of effective assistance of counsel. Second, defendant argues that the court erred in imposing a $129.75 criminal justice administration fee (booking fee), pursuant to Government Code section 29550.1, without first determining that he had the ability to pay the fee. He asserts that this statute should be read as impliedly requiring an ability-to-pay determination, or, alternatively, the absence of such a requirement constituted a violation of his constitutional right to equal protection under the law.

We reject defendant's claim that he should have been afforded the opportunity to withdraw his plea. In doing so, we conclude that defendant forfeited his claim that the sentence violated the terms of his plea bargain, and his trial attorney's failure to assert the claim did not constitute ineffective assistance of counsel. We also reject defendant's statutory and constitutional challenges to the imposition of the booking fee. But to the extent the abstract of judgment reflects an incorrect term of parole, we will direct the trial court to correct it. We will affirm the judgment as so modified.

In July 2006, a longtime member of the El Hoyo Palmas Norteño street gang was killed at a party. In December 2006, the brother of a member of that Norteño gang was also killed. "These murders sparked an onslaught of murders directed at Sureño gang members."

On February 5, 2007, defendant and another El Hoyo Palmas Norteño gang member approached three male Sureño gang members who were seated in a car in a known Sureño neighborhood. Defendant and his associate fired at the three Sureño males, and one was shot in the hand. Defendant was arrested 10 days later, and the police found in his possession a nine-millimeter Manurhin handgun with the serial numbers obliterated. From a ballistics test, the police determined that defendant's handgun was involved in the February 5, 2007 shooting incident. Defendant was also identified through a photo lineup. A search of defendant's home yielded a shotgun and gang paraphernalia. Defendant was 16 at the time of the incident.

## PROCEDURAL BACKGROUND

Defendant was charged with eight felonies in an information filed March 3, 2011, i.e., conspiracy to commit murder (§ 182, subd. (a)(1); count 1); five counts of attempted murder (§§ 664, 187; counts 2, 4, 6, 7, & 8); murder (§ 187; count 3); and shooting at an inhabited dwelling (§ 246; count 5). The information included the following special allegations: each of the eight crimes was committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)); defendant was a minor, 16 years old, within the meaning of Welfare and Institutions Code section 707, subdivision (d)(1) at the time the offenses alleged in counts 1 through 4, and 6 through 8 were committed, and that the offenses were ones enumerated under section 707,

_____

[2] We present an abbreviated discussion of the facts underlying the conviction, derived from the probation report, because they are not germane to the appellate claims.

subdivision (b) of the Welfare and Institutions Code; defendant committed the crimes alleged in counts 2, 3, 4, 6, 7, and 8, by personally discharging a firearm (§ 12022.53); the murder as alleged in count 3 was carried out to further the activities of a criminal street gang (§ 190.2, subd. (a)(22)); and as to count 8, defendant personally inflicted great bodily injury in the commission of the offense (§ 12022.7).

On July 1, 2011, pursuant to a negotiated disposition, defendant pleaded guilty to attempted murder charged in count 8; admitted the allegation that the crime was committed willfully, deliberately, and with premeditation (§ 189); admitted the gang allegation (§ 186.22, subd. (b)(1)(C)); admitted the allegations under subdivisions (b) and (d) of Welfare and Institutions Code section 707; and admitted the personal infliction of great bodily injury allegation (§ 12022.7). He entered the plea with the understanding that the remaining counts and enhancements (including the firearm enhancement in count 8) would be dismissed and that he would receive a 15-years-to-life prison sentence.

On September 23, 2011, the trial court sentenced defendant to 15 years to life in prison, and dismissed counts 1 through 7 and the remaining enhancements. Defendant filed a timely notice of appeal challenging the validity of the plea.[3]

DISCUSSION

I.     *Negotiated Plea Agreements*

As the high court has explained: "Plea bargaining is an accepted practice in American criminal procedure. [Citation.] The process is not only constitutionally permissible [citation], but has been characterized as an essential and desirable component of the administration of justice. [Citation.] Concomitant with recognition of the necessity and desirability of the process is the notion that the integrity of the process be maintained by insuring that the state keep its word when it offers inducements in

---

[3] Defendant, upon application, obtained a certificate of probable cause. (See Cal. Rules of Court, rule 8.304(b).)

4

exchange for a plea of guilty." (*People v. Mancheno* (1982) 32 Cal.3d 855, 859-860, fn. omitted (*Mancheno*).) "The negotiated plea agreement, which results in the waiver of important constitutional rights, 'is an accepted and integral part of our criminal justice system.' [Citations.] Such agreements benefit the system by promoting speed, economy and finality of judgments." (*People v. Panizzon* (1996) 13 Cal.4th 68, 79-80.)

Before accepting a guilty plea pursuant to a negotiated disposition, the court must admonish the defendant of the constitutional rights he or she is waiving (*Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122), and must advise the defendant of the direct consequences of the plea (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 (*Bunnell*)). The matter of parole is one such plea consequence of which the defendant must be advised by the court under *Bunnell*. (*In re Moser* (1993) 6 Cal.4th 342, 351-352 (*Moser*).) At the time the plea is taken, if the court approves the plea, "it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea." (§ 1192.5.) If the plea agreement is not accepted by the People and approved by the court, the guilty or no contest plea is "deemed withdrawn." (*Ibid.*)

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello v. New York* (1971) 404 U.S. 257, 262.) Due process applies not only to the acceptance of the plea; "the requirements of due process attach also to implementation of the bargain itself. It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some remedy."

5

(*Mancheno*, *supra*, 32 Cal.3d at p. 860.)  Where a violation of a plea bargain occurs, the typical remedy is "to allow [the] defendant to withdraw the plea and go to trial on the original charges."  (*Ibid*.)  Alternatively, the court may specifically enforce the bargain, but will find the plea withdrawal remedy more appropriate "when specifically enforcing the bargain would have limited the judge's sentencing discretion in light of . . . additional information or changed circumstances between acceptance of the plea and sentencing."  (*Id*. at p. 861.)

II.     *Court Was Not Required to Permit Defendant to Withdraw His Plea*

    A.     *Background*

At the commencement of the hearing on July 1, 2011, defense counsel and the prosecution advised the court that the parties had arrived at a negotiated disposition. Under the terms of the plea bargain as recited by counsel, defendant agreed to plead guilty to count 8 (premeditated attempted murder) and to admit the gang enhancement associated with that charge.  In exchange, defendant would receive "guaranteed 15[-]to[-]life top/bottom" prison sentence.  The plea bargain included the agreement that the People would dismiss the remaining counts and enhancements.

After the court advised defendant of the rights he was giving up as a result of his guilty plea and confirmed that he was knowingly and voluntarily pleading guilty, it indicated, with confirmation from the People, that "[u]pon your release from state prison, you will be placed on parole for up to three years . . . ."  The court also advised defendant that it had approved the disposition, but that it could withdraw that approval at the time of the pronouncement of judgment, in which case defendant would be allowed to withdraw his guilty plea.  After the court confirmed the terms of the plea bargain and advised defendant of the rights he was waiving by pleading guilty, defendant pleaded guilty to count 8, admitted the premeditation and gang allegations, and admitted that he was a minor, 16 years of age or older, at the time of the commission of the offense as alleged under Welfare and Institutions Code section 707, subdivision (d)(1).  The court found

6

defendant to have (1) been properly advised of the charges against him, the elements of those charges and of the possible defenses thereto; (2) been informed of the consequences of his plea and admissions; (3) been fully informed of his constitutional rights; and (4) made a knowing, intelligent, free, and voluntary waiver of his constitutional rights. The court also found the existence of a factual basis for the plea, pursuant to counsel's stipulation thereof.

At the sentencing hearing on September 23, 2011, defense counsel, upon the court's asking counsel whether there was any legal cause as to why judgment could not then be imposed, advised the court that "[t]he only legal cause [is that] Mr. Kamakani desires to make an oral motion to withdraw the plea." The court then, without further comment by defense counsel, allowed defendant himself to make an oral statement. Defendant advised the court that on the day of the change of plea hearing, he had received an extreme amount of pressure from his family; at the time of the hearing, he had not received discovery about which he had informed his attorney; his attorney had told him that the plea deal would not be on the table if he did not accept it that day; afterwards, he received discovery that led him to conclude that his chances of proceeding to trial were improved; and had he not talked with his family, he would not have accepted the plea deal. The court denied defendant's oral motion to withdraw his guilty plea.

The trial court then sentenced defendant on the count 8 conviction to 15 years to life in prison. The court advised defendant that upon his release from prison, he would be subject to parole for a period of seven years to life. The court also dismissed all remaining charges and enhancements.

B.    *Contentions of the Parties*

Defendant contends that the trial court was required to give him the opportunity to withdraw his guilty plea. His central point is that the court's imposition of a sentence that included a parole term of seven years to life after his release from prison constituted a more severe sentence than the three-year parole term promised by the court and

7

concurred in by the People. In support of this position, defendant cites *People v. Johnson* (1974) 10 Cal.3d 868 (*Johnson*). There, the high court held that when the trial court ultimately rejects a plea bargain and announces an intention to impose a sentence more severe than the one the defendant originally agreed to, section 1192.5 requires that the defendant be permitted to withdraw his guilty plea. (*Johnson*, *supra*, at pp. 872-873.) Defendant argues further that when the court is jurisdictionally unable to impose the agreed upon sentence and must impose a more severe sentence (i.e., because the agreed-upon sentence is unauthorized under the law), a defendant must be allowed to withdraw his or her plea. (See *People v. Baries* (1989) 209 Cal.App.3d 313, 319 (*Baries*).)

Defendant concedes that he did not object below to the imposition of a sentence he contends was more severe than the one promised him by the court and thus was at variance with his plea bargain. But he argues that he should not be deemed to have forfeited his appellate challenge. Defendant argues that, in the alternative, if the claim was forfeited, his attorney's failure to object to the sentence and to move to withdraw his client's guilty plea constituted ineffective assistance of counsel.

The Attorney General responds that the record "reflects that the potential parole term was not a negotiated term of the negotiated disposition." She also argues that defendant "failed to alert the trial court that the mistaken admonishment on the potential parole term was a basis for withdrawal of the plea and [he therefore] forfeited that appellate claim." The Attorney General asserts further that defendant's alternative ineffective assistance of counsel claim must fail because he cannot show prejudice.

### C. *There Was No Breach of the Plea Bargain*

#### 1. *The Claim Was Forfeited*

In support of his contention that his claim was not forfeited, defendant argues: "It was clear that Mr. Kamakani's counsel was not pursuing any attempt to withdraw the guilty plea. At the beginning of the hearing, counsel made clear that Mr. Kamakani would be making his own oral motion to withdraw [the plea]. After rejecting Mr.

8

Kamakani's oral motion, the trial court told Mr. Kamakani that it was going 'forward with the negotiated disposition . . . .' So Mr. Kamakani may very well have believed this and been mislead [*sic*] into thinking that the court was imposing the same sentence it had promised at the guilty plea hearing . . . . Under these circumstances, where defendant was effectively representing himself in connection with any motion to withdraw the plea, and where the trial court's statements could have mislead [*sic*] a lay defendant, the court should address the merits of this claim."

We disagree with defendant's position. " 'The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had.' " (*People v. Walker* (1991) 54 Cal.3d 1013, 1023 (*Walker*), overruled on other grounds in *People v. Villalobos* (2012) 54 Cal.4th 177, 180.) That principle applies here. Defendant, upon hearing the sentence announced by the court, could have easily raised an objection thereto by asserting that the seven-years-to-life parole term constituted a material variance from the plea bargain to which he agreed. The court then could have heard argument from both defense counsel and the prosecutor on the matter and could have rendered a decision as to whether the proposed sentence, in fact, was more severe than the bargain to which the parties agreed, thereby permitting defendant to withdraw his plea. The claim was forfeited.

### 2. *Defendant's Ineffective Assistance of Counsel Claim*

#### a. *Ineffective Assistance of Counsel Claims*

A criminal defendant has the right to the assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This constitutional right to counsel entitles a defendant not simply to " 'bare assistance' " but rather to effective assistance. (*People v. Jones* (1991) 53 Cal.3d 1115, 1134.) There are two elements to an ineffective assistance of counsel claim: (1) deficient performance, and (2) prejudice resulting from such deficient performance. (*People v. Weaver* (2001) 26 Cal.4th 876, 961.) The deficient performance

9

element consists of "a showing that 'counsel's representation fell below an objective standard of reasonableness.' " (*In re Marquez* (1992) 1 Cal.4th 584, 602-603, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) " 'In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny . . .' and must 'view and assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act.' " (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)  Moreover, "[i]f the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*Ibid.*)  To satisfy the second element of "prejudice," the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to defendant, i.e., a probability sufficient to undermine confidence in the outcome." (*In re Ross* (1995) 10 Cal.4th 184, 201.)

The burden of establishing ineffective assistance of counsel is upon the party claiming it.  (*People v. Pope* (1979) 23 Cal.3d 412, 425.)  This means that defendant here "must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to [the] defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*People v. Kipp* (1998) 18 Cal.4th 349, 366, quoting *Strickland*, *supra*, 466 U.S. at p. 686.)

"Surmounting *Strickland*'s high bar is never an easy task." (*Padilla v. Kentucky* (2010) 559 U.S. 356, 371.)  And in deciding an ineffective assistance of counsel claim, the reviewing court need not inquire into the two components (deficient performance and prejudice) in any particular order; in the event the defendant's showing on one component is insufficient, the court need not address the remaining component.  (*In re*

10

*Cox* (2003) 30 Cal.4th 974, 1019-1020.)  "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland*, *supra*, 466 U.S. at p. 697.)

> b.     *Defendant's Ineffective Assistance of Counsel Claim Fails*

As we discuss, *post*, defendant's ineffective assistance of counsel claim must be resolved against him because he cannot demonstrate prejudice.  We therefore do not address the first prong of his ineffective assistance of counsel claim, i.e., whether the failure of his counsel to object to the proposed sentence constituted deficient performance.  (*In re Cox*, *supra*, 30 Cal.4th at pp. 1019-1020.)

Defendant claims that he sustained prejudice because of his attorney's failure to object that the sentence imposed was contrary to, and more severe than, the sentence he "was promised in obtaining the guilty plea."  He argues that "the correct prejudice inquiry must ask whether that motion [to withdraw the guilty plea] would have been successful.  If the motion would have been successful, prejudice has been shown.  If the motion would have failed, there is no prejudice."  Accordingly, in the context of deciding whether defendant has established prejudice--i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to defendant" (*In re Ross*, *supra*, 10 Cal.4th at p. 201)--we examine the underlying merits of defendant's claim that the sentence constituted a breach of what was promised him when he pleaded guilty, thereby entitling his withdrawal of the guilty plea.

In analyzing whether the sentence imposed was in violation of what was promised him when he pleaded guilty, we follow the two-step approach enunciated by our high court in *Walker*, *supra*, 54 Cal.3d at pages 1019 to 1020, namely, whether (1) the defendant has been properly admonished before pleading guilty under a negotiated plea, and (2) there has been adherence to the terms of the plea bargain.  (*Moser*, *supra*, 6 Cal.4th a p. 351.)  Here, we ask (1) whether defendant was properly admonished when he

entered his guilty plea, insofar as the court's recital that he would receive a three-year parole term upon completion of his prison sentence; and (2) whether the imposition of the seven-years to life parole term constituted a violation of the plea agreement?

It is clear that the answer to the first question is "No." The trial court erroneously advised defendant that one consequence of his guilty plea was that he would receive a three-year parole term upon being released from prison. Because, defendant argues, the three-year parole term applies to those sentenced to a term of less than life in prison, and defendant here was sentenced to a life term (15 years-to-life), under section 3000, subdivision (b)(1), he was in fact subject to a five-year parole term; the court misadvised defendant that the parole term would be three years. The Attorney General concedes that the court misadvised defendant concerning the length of the parole term.[4] The court's failure to advise, or misadvisement, of the parole consequences of a guilty plea is a violation of the court's obligation under *Bunnell*, *supra*, 13 Cal.3d at page 605, to advise a criminal defendant of the direct consequences of his or her conviction upon entry of a guilty plea. (*Moser*, *supra*, 6 Cal.4th at pp. 351-352; see also *People v. Nuckles* (2013) 56 Cal.4th 601, 609.)

But as the high court has explained, establishing that the trial court failed to advise or gave an incorrect advisement of the consequences of a defendant's plea does not automatically entitle him or her to relief; the defendant must also show that prejudice resulted from the error, namely, that he or she "would not have entered the plea of guilty had the trial court given a proper advisement." (*Moser*, *supra*, 6 Cal.4th at p. 352.) Here, defendant has made no such showing. Nor does he argue that he is entitled to relief based upon the court misadvising him of the consequences of his plea. Rather, he bases his claim on the fact that the sentence imposed was more severe than the one promised him

---

[4] The Attorney General refers to the court's statement to defendant that he would be subject to a three-year parole term as "the trial court's mistaken admonishment."

in the plea bargain because it included a parole term of more than three years. We therefore turn to the second question under *Walker*, *supra*, 54 Cal.3d at pages 1019 to 1020, namely, whether there has been adherence to the terms of the plea bargain.

As the high court has explained, " 'A court may not impose punishment significantly greater than that *bargained for* by finding the defendant would have agreed to the [additional] punishment had it been made a part of the plea offer. "Because a court can only speculate *why a defendant would negotiate for a particular term of a bargain*, implementation should not be contingent on others' assessment of the value of the term to defendant." ' " (*Moser*, *supra*, 6 Cal.4th at p. 354, quoting *Walker*, *supra*, 54 Cal.3d at p. 1026.) Thus, in order for defendant to prevail on his assertion that the sentence imposed was materially at variance with the sentence he was promised when he pleaded guilty, he must establish that the three-year parole term to which the trial court alluded was a specific term of the bargain. The record reflects that it was not.

As noted, at the outset of the change of plea hearing, defense counsel announced that there had been "a proposed disposition. That disposition is to enter a plea to Count 8. The arming enhancement I believe is going to be dismissed. He will admit. Of course, it will be a strike offense in the future. This is guaranteed 15 to life top/bottom." The prosecutor then acknowledged that this comported with her understanding of the plea agreement; she added that "in exchange for his plea of guilty to the premeditated attempted murder with the gang enhancement and admission to the [Welfare and Institutions Code section] 707[, subdivision] (d) [allegation] in Count 8, the People will be dismissing all other charges and the [section] 12022.53 [allegation] on the Count 8 charge, which is the gun enhancement." Neither counsel mentioned the term of parole as a term of the plea bargain.

The trial court then asked defendant whether (1) he was thinking clearly; (2) he had consumed alcohol, drugs, or medication that might have impaired his ability to think clearly; (3) he had enough time to consult with his attorney and had discussed with him

13

the charges, possible defenses thereto, his constitutional rights, and the consequences of his decision to plead guilty; and (4) he was satisfied with his attorney's advice. The court then asked defendant: "Besides what has been stated on the record, have there been any other promises or conditions made to you in exchange for your plea of guilty this afternoon?" Defendant responded, "No, sir." Following the court's advising defendant of the constitutional rights that he would be waiving by pleading guilty, the following exchange between the court and defendant occurred: "The Court: The maximum possible state prison sentence for the charges and allegations for which you will enter a change of plea . . . . [¶] . . . [¶] [i]s 15 years to life that has already been stated on the record. You must serve 15 years before you are eligible for parole. Do you understand that? [¶] Defendant: Yes, sir. [¶] The Court: Obviously, you will not be considered for probation or for a lesser term in state prison. That's essentially the only promise that is being made to you other than all charges and allegations will be dismissed. Is that your understanding? [¶] Defendant: Yes, sir." It is only after this entire exchange occurred that the court erroneously advised defendant that upon his release from prison, he would be placed on parole for three years.

It is clear that a three-year period of parole was not a term of " 'punishment . . . that [was] *bargained for*' " by defendant and the prosecution. (*Moser*, *supra*, 6 Cal.4th at p. 354.) Nor could the length of defendant's parole be a proper subject of the plea bargain. "[T]he length of a parole term is *not* a permissible subject of plea negotiations. . . . Neither the prosecution nor the sentencing court has the authority to alter the applicable term of parole established by the Legislature." (*Id*. at p. 357; cf. *People v. McClellan* (1993) 6 Cal.4th 367, 379-380 [rejecting claim that inclusion of sex offender registration in sentence violated the plea agreement; registration was a statutory requirement and not a permissible subject of plea agreement negotiation].)

In *People v. Avila* (1994) 24 Cal.App.4th 1455 (*Avila*), we were faced with a question nearly identical to the matter raised here. In *Avila*, the defendant pleaded guilty

14

to second degree murder pursuant to a negotiated plea in which he would receive a 15-years-to-life prison sentence. (*Id*. at p. 1457.) The court advised him at the time he pleaded guilty that after completion of his prison term, he would be on parole for a period of up to three years. (*Id*. at p. 1458.) The defendant moved to withdraw his plea prior to sentencing; he argued that he had been misadvised as to the parole period, which was in fact a life term, and that this error constituted a violation of his plea bargain. (*Ibid*.) The trial court denied the motion, concluding that the parole period was not a term of the plea bargain. (*Ibid*.) We rejected the defendant's appellate challenge.

We concluded first that although the misadvisement constituted error under *Bunnell*, *supra*, 13 Cal.3d 592, the defendant had failed to show prejudice. (*Avila*, *supra*, 24 Cal.App.4th at pp. 1459-1460.) Secondly, we rejected the defendant's claim that he should have been allowed to withdraw his guilty plea because there was a breach of the plea bargain. We reasoned: "[W]e cannot agree that such a violation occurred. First, there is no evidence that a three-year maximum parole period was 'a subject of negotiation (or even discussion) during the plea-negotiation process, or that the prosecutor made any promises or inducements relevant to the challenged element. [Citation.]' [Citation.] Second, the parole period was a statutorily mandated consequence of defendant's conviction; it therefore could not have been the subject of negotiations or a condition of the final agreement. [Citations.] We must conclude, therefore, that the trial court's erroneous advisement regarding the parole period did not violate a term of the plea bargain." (*Id*. at p. 1461, fn. omitted.)

Similarly, in *Berman v. Cate* (2010) 187 Cal.App.4th 885, 888 (*Berman*), the petitioner, who had served a prison term after pleading guilty pursuant to a plea bargain and was placed on parole, challenged the Department of Corrections and Rehabilitation's action of increasing the term of his parole from three years to five years. He argued that the three-year parole period "was an integral term of his plea agreement." (*Id*. at p. 893.) Relying in part on *Avila*, *supra*, 24 Cal.App.4th 1455, the court rejected the claim,

15

finding that there was no evidence that the length of parole was a subject of negotiation. (*Berman*, *supra*, at p. 893.)  The court reasoned:  "The [trial] court . . . summarized the terms of the negotiated plea, stating only that petitioner would receive a three-year prison sentence in exchange for his guilty plea and waiver of accumulated credits.  No mention of any promised term of parole upon release was made.  When asked if petitioner had been promised anything else in exchange for his plea, petitioner replied in the negative.  This . . . strongly reflects that the referenced parole term was merely an advisement of the consequences of his plea, not a term that induced or provided consideration for petitioner to enter his plea."  (*Id*. at p. 894.)  The *Berman* court also noted that a number of courts had held that " 'the length of a parole term is not a permissible subject of plea negotiations.' "  (*Ibid*., quoting *Moser*, *supra*, 6 Cal.4th at p. 357.)

We find our reasoning in *Avila* and the analysis of the Fourth District Court of Appeal, Division Two, in *Berman* to be equally sound here.  And we reject defendant's assertion that we should disregard *Avila* because "the legal claims Mr. Kamakani is making are far different from the claims made in *Avila*."  Defendant argues that he, unlike the defendant in *Avila*, is not the asserting "that the length of parole was a 'term' of the negotiated plea."  But elsewhere, he argues repeatedly that he should have been permitted to withdraw his guilty plea because the sentence imposed was more severe than the one he was "promised" when he pleaded guilty.  We see no distinction between the contention that defendant was "promised" a more lenient sentence than what he ultimately received, and the claim that the more lenient sentence was a term of the plea bargain that was breached.  In either case, we view the controlling question to be this:  When the court misadvises defendant about the anticipated length of his parole (but that parole length is not part of the plea bargain), must he be afforded the opportunity to withdraw his guilty plea when the ultimate parole term at sentencing is less favorable?  Here, as in *Avila* and *Berman*, this question must be answered in the negative.

Defendant argues that *Baries*, *supra*, 209 Cal.App.3d 313 compels the conclusion that he should have been permitted to withdraw his guilty plea because "the court promised him something that it was unable to deliver--a three-year parole term." In *Baries*, both the People and the defendant appealed from the judgment after the trial court imposed a prison sentence for offenses committed in Santa Clara County to run concurrently with a prison term the defendant received for offenses committed in Merced County. (*Id*. at p. 316.) The People argued that the sentence was unauthorized because consecutive sentencing was required under section 12022.1, and the defendant agreed with that position but argued that the court's imposition of a concurrent sentence was in effect an exercise of its discretion under section 1385 in striking an enhancement. (*Baries*, *supra*, at p. 316.) We concluded in *Baries* that the concurrent sentence was unauthorized. (*Id*. at p. 319.) But because "[c]oncurrency was an express condition of the [parties'] plea [agreement]" (*id*. at p. 316), we held that the defendant had to be given the opportunity to withdraw her plea if she so desired. (*Id*. at p. 319.)

Here, as we have concluded, the three-year parole term was merely an advisement by the court; it was not "an express condition of the plea," unlike concurrency in *Baries*, *supra*, 209 Cal.App.3d at page 316. Defendant's reliance upon *Baries* is therefore misplaced.

Defendant's reliance on *Johnson*, *supra*, 10 Cal.3d 868 is similarly misplaced. In that case, "the trial court withdrew its prior approval of a negotiated plea bargain but failed to advise [the] defendant of his statutory right to withdraw his guilty plea made in consideration of the rejected bargain." (*Id*. at p. 870.) The key element of the plea bargain that the court ultimately rejected was receiving a county jail sentence instead of incarceration in state prison. (*Ibid*.) The court withdrew its approval of the plea bargain after learning that the defendant had concealed his true identity and his prior criminal record. (*Id*. at pp. 870-871.) The high court concluded that the trial court erred by failing to comply with section 1192.5, in that it should have informed the defendant at the time

17

he pleaded guilty of his right to withdraw his plea if it ultimately rejected the plea bargain, and once it rejected the bargain, it should have given him the right to withdraw his plea. (*Johnson*, *supra*, at pp. 871-873.) Here, the court did not reject the plea bargain, as the three-year parole term of which the court misadvised defendant when he pleaded guilty was not a term of the bargain. Accordingly, *Johnson* does not assist defendant.

"[I]n order to be deemed a term of a plea agreement, the circumstances must show that the ' " 'plea rest[ed] in [a] significant degree on a promise or agreement . . . so that it can be said to be part of the inducement or consideration . . . .' " ' " (*Berman*, *supra*, 187 Cal.App.4th at p. 893, quoting *Walker*, *supra*, 54 Cal.3d at p. 1024.) The three-year parole period the court erroneously advised defendant here was a purported consequence of his guilty plea. It was not a term of the plea bargain, because defendant's plea did not rest on it and it was not an inducement or consideration in his agreement to plead guilty to the attempted premeditated murder count alleged in the information. Accordingly, since any motion to withdraw defendant's plea on the ground that the sentence allegedly deviated from the terms of the plea bargain would have lacked merit, defendant cannot establish the prejudice prong of his ineffective assistance of counsel claim. (*In re Cox*, *supra*, 30 Cal.4th at pp. 1019-1020.)[5]

---

[5] Defendant argues in the alternative that because the seven years to life parole term was unauthorized, it should be ordered stricken. The abstract of judgment indicates: "Advised of 7 years to life parole/appeal rights." To the extent that this portion of the abstract may be construed as fixing the term of parole, as opposed to an advisement, it is unauthorized. (*Berman*, *supra*, 187 Cal.App.4th at p. 898 [Board of Parole Hearings "has sole authority, within the confines set by the Legislature, to set the length of parole and the conditions thereof."].) Accordingly, we will direct the trial court to prepare an amended abstract striking the sentence, "Advised of 7 years to life parole/appeal rights," and replacing it with "Advised of appeal rights. Length of parole following release from prison shall be set by the Board of Parole Hearings as provided by California law."

III.     *Defendant's Challenge to the Booking Fee Lacks Merit*

A.      *Background and Contentions of the Parties*

At sentencing, the trial court imposed a booking fee of $129.75, payable to the City of San José.  It noted that it was being "imposed pursuant to Government Code [sections] 29550[,] . . . 29550.1 and [29550.2]."  The court neither inquired about defendant's ability to pay the fine nor made a specific finding about defendant's ability to pay.  Beyond identifying the three Government Code sections, the court did not specify the statutory authority under which this booking fee was being imposed.  But the parties agree that because defendant was arrested by city authorities (specifically, the City of San José police), Government Code section 29550.1 was the statute under which the booking fee was imposed.

Defendant claims that the trial court erred because it did not make a determination of defendant's ability to pay the booking fee, and he is, in fact, indigent.  He acknowledges that the statute under which the booking fee was imposed here (Gov. Code, § 29550.1) does not specifically require the court to determine that the defendant has the ability to pay the fee.  But he contends that because comparable booking fee statutes (*id*., §§ 29550, subd. (d)(2) & 29550.2, subd. (a)) contain an ability-to-pay condition, we should imply such a requirement under Government Code section 29550.1.  In the alternative, if the statute cannot be so construed, the imposition of the booking fee here without such an ability-to-pay determination violated his equal protection rights under the federal and state Constitutions.

The Attorney General contends that defendant forfeited this challenge.  She argues further that even were the claim not forfeited, the equal protection claim fails.

19

B.      *Forfeiture*

We consider as a threshold matter whether defendant's equal protection claim has been forfeited because he failed to assert it below.[6]  We conclude that even were the constitutional claim forfeited--a finding we do not make here--we will address it on its merits as a question of law submitted on undisputed facts.

" ' "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*People v. Saunders* (1993) 5 Cal.4th 580, 590, quoting *United States v. Olano* (1993) 507 U.S. 725, 731.)  The purpose of the forfeiture doctrine " 'is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had. . . .' " (*Walker*, *supra*, 54 Cal.3d at p. 1023.)

Our high court has applied the doctrine of forfeiture in a variety of contexts to bar claims not preserved in the trial court in which the appellant had asserted an abridgement of fundamental constitutional rights.  (See, e.g., *People v. Williams* (1997) 16 Cal.4th 153, 250; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1116, fn. 20.)  Courts in a number of instances have found that the appellant's unpreserved equal protection claim, such as the one made by defendant here, was forfeited.  (See, e.g., *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; *People v. Burgener* (2003) 29 Cal.4th 833, 861, fn. 3.)  Application of the forfeiture doctrine to the area of sentencing "is of recent vintage." (*People v. McCullough* (2013) 56 Cal.4th 589, 594 (*McCullough*); see also *People v. Scott* (1994) 9 Cal.4th 331, 354 [challenge to sentence forfeited where sentence "though

_____

[6] While " 'waiver' " is the term commonly used to describe a party's loss of the right to assert an appellate challenge based upon the failure to raise an objection below, " 'forfeiture' " is the more technically accurate term.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

otherwise permitted by law, [was] imposed in a procedurally or factually flawed manner"]; *People v. Welch* (1993) 5 Cal.4th 228, 237 [unpreserved challenge to reasonableness of probation conditions forfeited].)

Defendant did not raise any challenge below to the imposition of the booking fee. Were defendant's challenge here one based simply upon the insufficiency of the evidence of defendant's ability to pay the booking fee the court imposed, such challenge would be forfeited under the high court's recent decision in *McCullough*. There, the defendant challenged the sufficiency of the evidence to support a booking fee imposed under Government Code section 29550.2, subdivision (a). (*McCullough*, *supra*, 56 Cal.4th at pp. 590-591.) The high court held "that because a court's imposition of a booking fee is confined to factual determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal." (*Id.* at p. 597.)[7]

But the nature of defendant's challenge here is a constitutional one. Therefore, we do not find that under *McCullough*, he forfeited this challenge by failing to assert it below. An appellate court may reach the merits of a constitutional claim when it is " 'one of law presented by undisputed facts in the record before us that does not require the scrutiny of individual circumstances, but instead requires the review of abstract and generalized legal concepts--a task that is suited to the role of an appellate court.' " (*People v. Delacy* (2011) 192 Cal.App.4th 1481, 1493; see *In re Sheena K.* (2007) 40 Cal.4th 875, 885 (*Sheena K.*).) Moreover, even were we to find that defendant forfeited

---

[7] In briefing filed before *McCullough* was decided, defendant argued that his claim was not forfeited under the authority of *People v. Pacheco* (2010) 187 Cal.App.4th 1392 (*Pacheco*). In *Pacheco*, this court held that the defendant's challenges to the court's imposition of a booking fee under either Government Code sections 29550, subdivision (c) or 29550.2 were not forfeited, notwithstanding his failure to object to them at the trial court. (*Pacheco*, *supra*, at p. 1397.) The high court in *McCullough* disapproved of *Pacheco* on this issue. (*McCullough*, *supra*, 56 Cal.4th at p. 599.)

his equal protection challenge, we nonetheless elect to decide it on the merits.  (*Sheena K*., *supra*, at p. 887, fn. 7 [appellate courts may exercise their discretion to review otherwise forfeited claims, generally ones involving important constitutional issues or substantial rights].)

### C.     *Constitutional Challenge*

There are two requirements for a successful equal protection challenge.  First, there must be " 'a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' "  (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*), quoting *In re Eric J*. (1979) 25 Cal.3d 522, 530.)  Secondly, the party asserting the claim must show that there is no rational relationship to a legitimate state purpose for the state's having made a distinction between the two similarly situated groups.  (*Hofsheier*, *supra*, at pp. 1200-1201.)[8]  Defendant's equal protection challenge to Government Code section 29550.1 fails because neither prerequisite is satisfied.

With respect to the first--"similarly situated groups"--prerequisite (*Hofsheier*, *supra*, 37 Cal.4th at p. 1199), persons who are subject to the imposition of booking fees under Government Code section 29550.1 are not similarly situated to criminal defendants who are potentially subject to booking fees imposed under Government Code sections 29550 and 29550.2.  The statutory scheme here provides for payment orders and probation conditions effecting the reimbursement of counties for at least part of their costs in booking persons arrested by their own officers and the officers of other entities

---

[8] "Of course, there are three potential standards by which to measure the challenged classifications under an equal protection analysis--strict scrutiny, rational basis, and an intermediate level of review applicable to gender classifications.  (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.)  However, legislation is usually subjected to a rational basis analysis (*ibid*.) . . . ."  (*People v. Cavallaro* (2009) 178 Cal.App.4th 103, 110, fn. 9.)  Defendant concedes that the equal protection analysis in this case is governed by the rational basis standard.

such as municipalities and the state. (*Id.*, §§ 29550-29550.2.) It classifies defendants according to the identity of the entity whose employees arrest them. Government Code section 29550.1 applies to persons arrested by an officer or agent of a "city, special district, school district, community college district, college, university, or other local arresting agency." Government Code section 29550, subdivision (d) applies to defendants arrested by officers of a county. And Government Code section 29550.2, subdivision (a) applies to arrests by a "governmental entity not specified in Section 29550 or 29550.1."

Defendant's challenge is based upon the fact that on the face of the statutes, a local arrestee (as to whom Gov. Code, § 29550.1 applies) may be required to pay a booking fee without any showing that he is able to pay it; in contrast county and state arrestees (as to whom Gov. Code, §§ 29550 or 29550.2 may apply) may only be subjected to such a fee if they are shown to have an ability to pay it. For purposes of the statutes challenged here, local arrestees are not "similarly situated" to county and state arrestees. The lack of similarity arises from the fact that under Government Code section 29550.1, a local arrestee is only liable for the fee "imposed by a county." The quoted phrase is manifestly a reference to the charge described in Government Code section 29550, subdivision (a)(1), which entitles a county to "impose a fee" on a local arresting agency "for reimbursement of county expenses incurred with respect to the booking or other processing of persons arrested by an employee" of that agency. Under that statute, the fee so imposed by the county "shall not exceed one-half" of the county's actual administrative costs. (Gov. Code, § 29550, subd. (a)(1).) And it is this charge which is passed on to the local arrestee by Government Code section 29550.1. Therefore, a local arrestee, such as defendant here, is liable for only one-half of the amount of booking fees for which county or state arrestees are potentially liable under Government Code sections 29550 and 29550.2, respectively. Therefore, local arrestees who are potentially liable for

23

booking fees imposed under Government Code section 29550.1 are not similarly situated to county or state arrestees.

Even if we were to conclude that defendant has satisfied the "similarly situated" test, the considerations we have discussed above establish a rational basis for the differential treatment of which he complains. Government Code section 29550.1 denies local arrestees, such as defendant, a benefit granted to other arrestees, i.e., the possibility of avoiding an assessment because he lacks the ability to pay it. But in conjunction with Government Code section 29550, subdivision (a)(1), it also grants local arrestees a benefit denied to county and state arrestees: local arrestees are effectively granted automatic forgiveness of half of their debt. The Legislature could have rationally concluded that this arrangement justified the exclusion of an ability-to-pay condition as to local arrestees because other arrestees are exposed to a potential debt double the size. A statutory classification " ' "must be upheld . . . *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification*. [Citations.] Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' " ' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482; see also *Hofsheier*, *supra*, 37 Cal.4th at pp. 1200-1201.)

For the foregoing reasons, we reject defendant's claim that the imposition of the booking fee under Government Code section 29550.1 violated his constitutional right to equal protection.

### D. *Statutory Interpretation Challenge*

In conjunction with his claim that Government Code section 29550.1 constitutes a violation of his equal protection rights, defendant contends that the statute should be read as containing an implied ability-to-pay finding by the trial court. He argues that "the omission of language requiring consideration of a defendant's ability to pay may have been a drafting oversight." We reject this contention.

As defendant acknowledges, Government Code section 29550.1 contains no requirement that the court, in imposing a booking fee, make a finding of the defendant's ability to pay the fee. The statute reads flatly: "A judgment of conviction shall contain an order for payment of the amount of the criminal justice administration fee by the convicted person . . . ." (Gov. Code, § 29550.1.) Defendant's argument that the absence of an ability-to-pay condition "may have been a drafting oversight" is simply speculation. He cites no legislative history or evidence of legislative intent, or any other matter (other than Gov. Code, §§ 29550 & 29550.2) to support his contention. " 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698.) And as also applicable here, " ' "[a]n intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein." ' " (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 412.) Finding no intent or evidence of a drafting oversight, we will not imply an ability-to-pay condition here.

We acknowledge that "statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) But we see no disharmony between the requirements under Government Code sections 29550 and 29550.2 that the court make an ability-to-pay determination before assessing the booking fee, and the absence of such a requirement under Government Code section 29550.1. Indeed, the absence of an ability-to-pay required finding in Government Code section 29550.1, in light of express requirements under Government Code sections 29550 and 29550.2, are indicative that the Legislature did not intend there to be such an ability-to-pay requirement under the former code section. "[T]he Legislature has demonstrated

25

that, if it intends to establish [this] requirement[], it knows how to draft statutory language expressly doing so.  The Legislature's omission of this language . . . therefore suggests that it did *not* intend to establish [the requirement]."  (*Estate of Joseph* (1998) 17 Cal.4th 203, 220 (dis. opn. of Chin, J.); see also *Jarrow Formulas*, *Inc*. *v*. *LaMarche* (2003) 31 Cal.4th 728, 735 [Legislature has shown it "knows how to create an exemption from the anti-SLAPP statute when it wishes to do so"].)  And as we have stated, *ante*, the Legislature could have rationally concluded that the exclusion of an ability-to-pay condition as to a local arrestee (under Gov. Code, § 29550.1) was appropriate, while requiring such a condition for other (county and state) arrestees, because each of the latter arrestees is potentially liable for a booking fee double the amount of the fee for which the local arrestee is potentially liable.

As the Second District Court of Appeal, Division Six, held in rejecting a statutory interpretation argument (adapted to our case here):  "In essence, [the defendant] asks us to rewrite [Government] Code section [29550.1 to include a requirement that the court find the defendant to have an ability to pay the fee].  We decline the invitation."  (*Unzueta v*. *Ocean View School Dist*. (1992) 6 Cal.App.4th 1689, 1696-1697.)

DISPOSITION

The trial court is directed to prepare an amended abstract of judgment, striking the sentence, "Advised of 7 years to life parole/appeal rights," and replacing it with the following:  "Advised of appeal rights.  Length of parole following release from prison shall be set by the Board of Parole Hearings as provided by California law."  As modified, the judgment is affirmed.

_____
                Premo, Acting P.J.

WE CONCUR:

_____
Elia, J.

_____
Bamattre-Manoukian, J.